MARTHA E. WEBBER

*v.*

GEORGE W. CURTISS *et al.*

104 309
22a 635

*Filed at Springfield September 28, 1882.*

1. SALE UNDER TRUST DEED—*of the good faith required of the trustee— and proper notice of the sale.* The trustee in a deed of trust is the agent of the grantor and his assigns, as well as of the creditor thereby secured, and it is his duty to protect the interests of all parties by acting in good faith in conducting the sale, and in seeing that reasonable publicity is given of the time, place, and terms of sale.

2. If the trustee acts honestly in selecting the medium of publication, his act can not be questioned, and the mere fact that others may differ from

him in judgment in that regard, does not necessarily tend to impeach his honesty. But if he acts from passion, prejudice, or from corrupt motives, he perverts his trust and exceeds his power, and binds none who are not prohibited from inquiring into his acts.

3.  A trustee, from improper motives, to prevent the owner from knowing of the sale and having an opportunity to redeem, and to prevent competition at the sale, advertised the land conveyed to him, for sale, under the power conferred upon him, in a newspaper having but a small circulation, and but eight subscribers in the township where the land was situate, and published at a place eighteen or twenty miles distant from the land, when there was published a weekly newspaper in the same town where he resided, and very near the land, and another in an adjoining town, also near the land, both having a large circulation and many subscribers in the town where the land was situated. The creditor resided in a distant State, and the debtors on the land. The sale was made without the knowledge of the grantor, and at a grossly inadequate price, to a partner of the trustee in the banking business, under such circumstances as to show that the trustee was interested in the purchase. The trustee, by his conduct, had led the grantor to suppose that no sale would be made for some time,—it was *held*, the sale should be set aside, and a redemption allowed as to such purchaser, and all others dealing with him for the property, with notice of the equities of the grantor.

4.  SAME—*of personal notice to the grantor.* Where, shortly before a sale of land under a power in a trust deed, the owner of the equity of redemption made a payment of over half the sum due on the note secured, and from negotiations with the trustee, as the agent of the non-resident creditor, for an extension of time on the balance due, and the conduct of the trustee, he was led to and did believe no sale would be made for some time thereafter, from which also the trustee must have known such owner was not expecting a present sale, and designed ultimately to redeem,—it was *held*, that it was the duty of the trustee to have given personal notice to the debtor of his intention to sell, before advertising the property, although the trust deed required no such notice.

5.  Although no personal notice is necessary to be given to the owner of the equity of redemption by the trustee in a deed of trust, of a sale under a power to be exercised on publication of notice in an ordinary case, this will not apply where the trustee, by his acquiescence in the conduct of such owner, or by his non-action, reasonably authorizes the belief that he will not sell without such personal notice. His position is such that he shall not affirmatively mislead, or stand by and knowingly permit those whose interests he represents to be misled, as to facts materially affecting their interests. In such case he should give personal notice before acting.

6.  POSSESSION—*notice of occupant's equities.* Where the owner of the equity of redemption is in the actual possession of land at the time of its sale under a deed of trust thereon, such possession will operate as notice to all the world of any equities in respect to such sale, which the occupant may hold.

APPEAL from the Circuit Court of Champaign county; the Hon. J. W. WILKIN, Judge, presiding.

Mr. WM. B. WEBBER, and Mr. S. F. WHITE, for the appellant:

A trustee will not be permitted to make a sale at an inadequate price. If he can not sell for a fair price, he should postpone the sale. *Richards* v. *Holmes,* 18 How. 141; *Jackson* v. *Clark,* 7 Johns. 217; *Sayles* v. *Smith,* 12 Wend. 57; *Miller* v. *Hull,* 4 Denio, 104; *Johnson* v. *Eason,* 3 Ired. Eq. 336.

If he has a discretion as to when to post notices, he must act in good faith; and if he acts fraudulently, and posts them in remote places, the sale may be avoided, and he made personally responsible. *Johnson* v. *Eason, supra; Rowan* v. *Lamb,* 4 G. Green, 478. So when a notice is fraudulently advertised in a remote newspaper. *Jencks* v. *Alexander,* 11 Paige, 619; *Singleton* v. *Scott,* 11 Iowa, 589.

The rule deduced from the authorities is, that proof of the slightest fraud or unfair conduct on the part of the trustee is sufficient to justify the interference of a court of equity, whenever it appears that the owner's property has been sold at a very low price. 2 Perry on Trusts, 169; *Longwith* v. *Butler,* 3 Gilm. 32; *Burr* v. *Borden,* 61 Ill. 391; *Hurd* v. *Case,* 32 id. 45; *Flint* v. *Lewis,* 61 id. 299; *Meacham* v. *Steele,* 93 id. 146.

Mrs. Webber's possession was notice. *Flint* v. *Lewis,* 61 Ill. 299; *Dyer* v. *Martin,* 4 Scam. 146; *White* v. *White,* 89 Ill. 460; *Mathison* v. *Prescott,* 86 id. 493; *Brown* v. *Gaffney,* 28 id. 150; *Riley* v. *Quigley,* 50 id. 304; *McDowell* v. *Lucas,* 97 id. 489.

Mr. THOMAS F. TIPTON, also for the appellant:

The purchaser at the trustee's sale is chargeable with notice of all the irregularities attending the sale, and their effect can

not be evaded by him.   *Gunnell et al.* v. *Cockerill,* 84 Ill. 319;
*Hamilton* v. *Lubukee,* 51 id. 415.

Schlorff, taking by quitclaim from such purchaser, is in
no better position.   *Brown* v. *Clides,* 10 Pet. 211; *Oliver* v.
*Pratt,* 3 How. 410.

As to setting aside sales for inadequacy of price, counsel
cited *Meath* v. *Porter,* 9 Heisk. 224; *Cassidy* v. *Cook et al.* 99
Ill. 389.

Where a trustee sells at auction, he must make due adver-
tisement, and give due notice to the parties interested.   *John-
son* v. *Eason et al.* 3 Ired. 330.

Courts of equity will scrupulously examine the conduct of
persons acting in a fiduciary or trust capacity.   *Thomas* v.
*Sloo,* 15 Ill. 66; *Morris* v. *Thomas,* 17 id. 112; *Atwood* v.
*Caldwell,* 12 id. 96; Story's Eq. Jur. secs. 331–335; *Moore
et al.* v. *School Trustees,* 19 Ill. 87.

Mr. FRANCIS M. WRIGHT, and Mr. HOMER W. AYERS, for
the appellees:

The presumption is, that a person charged with a trust
performs his duty, until the contrary appears; and where an
act is open to two constructions, one consistent with inno-
cence and fidelity to duty, and the other the reverse, the for-
mer will be presumed.   *Munn* v. *Burges,* 70 Ill. 604; *Goodwin*
v. *Mix,* 38 id. 115; *Bush* v. *Sherman,* 80 id. 160.

The notice published was such as was required by the
trust deed, and there is no evidence of intent to defraud any
one.   *St. Joseph Manf. Co.* v. *Daggett,* 84 Ill. 559.

No personal notice was required of the sale.   *Marston* v.
*Brittenham,* 76 Ill. 617.

Schlorff and Ahrens had the right to rely upon the record
as it was at the time of their purchase.   *Gibbon* v. *Hoag,* 95
Ill. 45; *McHaney* v. *Schenk,* 88 id. 366; *Gunnell* v. *Cockerill,*
79 id. 79; *Hamilton* v. *Lubukee,* 51 id. 415; *Cassell* v. *Ross,*
33 id. 244; *Reese* v. *Allen,* 5 Gilm. 536.

They must have had notice in fact of any irregularities in the sale, if any, otherwise they will be protected as innocent purchasers. *Hosmer* v. *Campbell,* 98 Ill. 580; *Wylder* v. *Crane,* 51 id. 490.

Proof of notice should be made, and not left to inference. *McHaney* v. *Schenk,* 88 Ill. 357; *Fairman* v. *Peck,* 87 id. 156.

A sale will not be set aside for mere inadequacy of price. *Watterman* v. *Spaulding,* 51 Ill. 425; *O'Callaghan* v. *Spaulding,* 91 id. 228; *Jenkins* v. *Pierce et al.* 98 id. 646.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

On the 15th of November, 1876, George G. Webber made a deed of trust of certain land to George W. Curtiss, as trustee, to secure the payment of his promissory note to Sarah Shields, and on the 1st day of March, 1879, he conveyed the same land to his wife, Martha E. Webber, subject to the deed of trust. The note matured on the 15th of November, 1879, and at that time, or shortly afterwards, he paid $2000 on the note. On the 5th of July, 1880, Curtiss conveyed the land, pursuant to what was claimed to have been a sale thereof, to Charles L. Burpee. On the 2d of September, 1880, Martha E. Webber tendered to Burpee the amount due upon the note, but he declined to receive it, and on the same day he conveyed the land to Frederick Schlorff. Schlorff afterwards mortgaged the land to Henry C. Ahrens. On the 4th of September, 1880, the bill in chancery in the present case was filed in the court below by Martha E. Webber, against Curtiss, Burpee, Schlorff and Ahrens, praying that the conveyances by Curtiss to Burpee, Burpee to Schlorff, and the mortgage by Schlorff to Ahrens, be set aside, and that she be allowed to redeem from the deed of trust. On hearing, the court below decreed that the bill be dismissed, and the present appeal is prosecuted from that decree.

The grounds of the relief sought are: Complainant had no notice, actual or constructive, of a sale of the land under

the deed of trust. She was misled by an agreement with Curtiss, the trustee, to the effect that he would let the debt stand for a certain time, upon her making a designated payment, which she did make, and induced thereby to believe there would, until the expiration of that time, be no sale under the deed of trust. ' The only notice given was by a publication in an obscure newspaper, published in a small village some eighteen or twenty miles distant from the land, and having but a small circulation, and but eight subscribers in the township in which the land is located. Complainant was not a subscriber for that paper, and no copy of the notice published was ever called to her attention. It is charged that papers having a large circulation, published near the land, were passed by, and the notice published in this paper, to prevent complainant obtaining knowledge of it. It is also charged that the land was susceptible of division, and might, with advantage, have been sold in separate parcels, but that it was sold *en masse.* And it is also charged that the price bid at the sale was grossly inadequate, etc.

We do not think any ground for setting aside the several conveyances, and letting the complainant in to redeem from the deed of trust, is shown because of any valid agreement to extend the time of the payment of the debt, nor because the land was sold *en masse,* nor because of the inadequacy of the sum bid for the property, taken singly; but we do think the notice of the sale was insufficient, and that the evidence in regard *to those* charges is competent as tending to show a fraudulent intent in giving such notice. The defendants insist that the notice was ample, and fully authorized by the power in the deed of trust; and our first inquiry, therefore, must necessarily be, what authority, in this respect, does the trust deed confer upon the trustee.

One clause in the power is in these words: "First giving four weeks' notice of the time and place of such sale, by advertisement in any of the weekly newspapers that may

then be published in the said county of Champaign, and State of Illinois, in the English language." The trustee is the agent of the grantor in the deed of trust, and his assigns, as well as of the creditor thereby secured, and it is his duty to protect his and their interests by acting in good faith in conducting the sale, and in seeing that reasonable publicity be given of the time, place, and terms of sale. (*Meacham* v. *Steele*, 93 Ill. 147.) As we said in *Cassidy* v. *Cook et al.* 99 Ill. 388 : "The power given, by its very terms implies that the trustee assumed the duty of thinking on the subject, and that he should adopt that course which he should think would be best to secure a good price. It does not mean that the trustee may do as he may please, or that he may do that which should be the most convenient for him." So long as the trustee shall act honestly in selecting the medium of publication, his act can not be questioned; and the mere fact that others may differ from him in judgment in that regard, does not necessarily tend to impeach his honesty. But if he act from passion or prejudice, or from corrupt motives, he perverts his trust and exceeds his power, and binds none who are not prohibited from inquiring into his act.

The land conveyed by this deed of trust lies in Urbana township, adjoining the city of Urbana, the county seat of Champaign county. The payee and owner of the note thereby secured resided in the State of Florida. The trustee resided in the city of Urbana, and his place of business was in the city, and about one-fourth of a mile from the land. Complainant and her husband resided on the land. There was published at the time this notice was published, in the same building, and immediately over the trustee's place of business, the "Champaign County Herald," a weekly newspaper, having a circulation of more than 1800 copies, between 400 and 500 of which were in Urbana township. At the same time there was also published at the city of Champaign, something like one mile or one mile and a half from

the land, the "Champaign County Gazette," a weekly news-paper, having a circulation of about 2000 copies in the county, 298 of which were in Urbana township. But Rantoul, where the notice was published, is in a different township, and is some eighteen or twenty miles distant from the land. The "Press," in which the publication was made, has, in all, a circulation of only 445, of which 280 are to subscribers in Rantoul township. The bulk of the remainder is to subscribers equally remote from the land, eight subscribers only,—among whom was not included complainant or any member of her family,—were in Urbana township, and in the townships adjoining Urbana the circulation was but nominal.

No reason is given why the notice was not published in a paper published in Urbana or Champaign. The trustee has not attempted to explain or defend his conduct in this regard, but seems to rest it entirely upon the ground that he had the arbitrary right to do as he did, which, we have seen, is not accurate. Had the land been located at or in the immediate vicinity of Rantoul, a reasonable presumption would be that those seeking investments in real estate in that neighborhood would inquire of such sources of local information as would be attainable, and, among other sources, look to the columns of the local paper for advertisements. But who, desiring to purchase property in Urbana, would have thought the proper source of information in regard to what was to be sold was the columns of the papers published in the remote villages of the county? To test the good faith of this publication, let it be supposed that Curtiss had been the owner of this land, and compelled to sell it at public auction within a limited time, does any one suppose he would have passed over the papers in Urbana and Champaign and advertised in the "Rantoul Press?" Why should any honest man have supposed such a publication was better, or even as good, as one published in Urbana or Champaign? It has not the

· advantage of proximity to locality, and its circulation (and therefore its opportunity to give information) is less than one-fourth,—in general, and as respects locality of the land, less than one-fiftieth.   No exceptional circumstance is shown to have existed which made this publication desirable, and even the selfish and insufficient excuse of previous business arrangements is excluded by proof "that the publisher had not, previous to that notice, received any patronage, printing or work of any kind from said Curtiss."   If Curtiss, had his own property been at stake, would not have made such a publication, he can not have acted in good faith in making it as a trustee.   At first blush, the conduct of the trustee in this regard is so repugnant to the ordinary apprehension of duty and honesty, that it calls for explanation.

We think, moreover, that the evidence discloses a selfish motive in the trustee—a desire on his part to have the land sold without the knowledge of the complainant, and without competition in the bidding—and that his action was prompted by that motive.   The trustee, Curtiss, and the defendant Burpee, were partners in banking and loaning money.   The note to Sarah Shields, to secure the payment of which the trust deed was given, was for money which she placed in their hands to loan, and which they loaned to Webber, and upon which they received a commission.   Although Curtiss only was trustee, the profits of the business belonged to the partnership.   Curtiss and Burpee also had control of a claim, which was in judgment, in favor of Sarah K. Oliver, against Miller, Somers and Schlorff; and also, growing out of this, another claim against John W. Somers and George C. Webber, by reason of a replevin bond executed by them, and it seems that Curtiss and Burpee had, in some way, incurred a collateral liability on this account.   Complainant's husband, George C. Webber, testifies as follows:   "When Mr. Burpee first notified me he had purchased the land, I went into the bank, and asked him why he and Curtiss had treated us so.

Burpee said I had been the means of beating him and Curtiss out of $700 or $800 by becoming John Somers' bondsman in the replevin suit, and unless we made that right we could not get that land back." Burpee, in his testimony, substantially admits the truth of this. His language is: "The conversation I had with Webber was this: He came into the bank, and wanted to know why I had treated him so. I told him I thought he had treated us pretty mean in that John Somers matter, and that I did not care about the land, and if he would settle that John Somers matter, his portion of it, that I would deed him back the land for just exactly what I paid for it." White, one of the attorneys of complainant in this matter, testified, and Curtiss admitted that White stated the truth, in a conversation with Curtiss in regard to the sale, and some time subsequent thereto, Curtiss said "he had no desire to injure Mr. Webber, but it could be settled only in one way, and that was for Webber to pay his portion of the Miller and Somers debt, in addition to what was due on the mortgage, and cost of sale."

Observe the injury is to the partners, and it is the partners that retaliate by getting title in one of themselves,— Burpee. Webber's question to Burpee included both Curtiss and Burpee as actors. The answer justified for both, on the ground of an injury to both, to the extent of the $700 or $800, and Curtiss, in speaking to White, instead of disclaiming all interest, virtually admitted his interest by giving a positive and unqualified ultimatum, saying "he had no desire to injure, but," etc. The sale, therefore, though nominally to Burpee, was for the benefit of Curtiss and Burpee. This is further confirmed in the fact testified to by Curtiss, that so far as Burpee and Curtiss were concerned, the claim of Sarah K. Oliver against George G. Webber and John W. Somers was satisfied by a payment made by Burpee from the amount he received for the sale of this land to Schlorff. That sale completed the scheme of Curtiss and Burpee, and made them

whole as to the amount out of which George G. Webber had beaten them. Now, to do what was done, it was probably necessary to advertise just as Curtiss did advertise. The property is shown to have been worth more than $6000, while the amount due on the note secured by the deed of trust, up to June 1, 1880, was only $1215.89, and so Curtiss must have known complainant, or some one in her right, would redeem, rather than let the property go to sale; so to prevent this, the sale must be made without her or their knowledge, and to prevent this knowledge, and at the same time make a formal compliance with the power, some out of the way newspaper must be selected. To subserve the selfish and personal ends of the trustee there was reason for the selection of the "Rantoul Press," but to protect the interests of the owner of the equity of redemption it was against reason to select such a medium of notice.

The evidence does not establish a contract for the extension of time, but it does tend to show that complainant was misled and put off her guard by the trustee. She testifies, and in that is corroborated by her husband, that in consideration of the payment that she made on the note, the trustee agreed that the balance might stand two or three years. But this is denied by Curtiss and Burpee. They admit, however, that there were propositions in regard to extending the time on the balance, but affirm that those of Curtiss were not accepted. Without considering which is more likely the correct view, it is evident that the trustee must have known the complainant and her husband were not expecting a present sale, and designed ultimately to redeem. If they had intended to let the property go, they would not have paid, as they did, after the note was due, the $2000. This was considerably more than half the debt, and was paid and accepted at a time when the trustee might, under the power, have advertised and sold. No steps were then, or soon after, taken to sell the property. The security was more than ample, and

the rate of interest the debt was then bearing was greater than it would bear if the old transaction were closed up and a new one entered into. The trustee ought to have known, and we presume did know, that complainant was relying on the belief that no steps would be taken immediately to sell the property for the balance due on the note. It is true the deed dispenses with personal notice, and if the sale had been promptly made upon the failure to pay the note when due, none could have been necessary. But this could not apply where the trustee, by his acquiescence in the conduct of those entitled to redeem, or by non-action, reasonably authorized the belief that he would not sell without notice. The position of the trustee forbids that he shall affirmatively mislead, or stand by and knowingly permit those whose interests he represents to be misled, as to facts materially affecting their interests. And, under all the facts here in proof, it was clearly the duty of the trustee to have notified the complainant that he intended to proceed to sell, before advertising for that purpose. He had no right, knowingly, to permit an advantage to be taken by others, much less to take it for his own benefit. Burpee knew of complainant's possession, and besides this, as partner and co-actor with Curtiss, he had actual knowledge which excludes him from the position of an innocent purchaser without notice. Schlorff also purchased with notice that complainant was in possession of the property, and that she claimed the right to redeem. He is bound to know what he might have known by following up the knowledge he had. Ahrens resided, it seems, for years with Schlorff, which is shown to have been only about one-fourth of a mile from this land. He had an opportunity to know that complainant was in possession, and doubtless did know it. He is charged with knowledge of her possession, and this was notice to the world of whatever rights she had in the land. *Bartling* v. *Brasuhn,* 102 Ill. 441; *Flint* v. *Lewis,* 61 id. 299; *White* v. *White,* 89 id. 460; *Mathison* v. *Prescott,* 86 id. 493.

. .,The cases cited by counsel for the defendants, (*Princeton Loan and Trust Co.* v. *Munson*, 60 Ill. 371, *Marston* v. *Brittenham,* 76 id. 617, and *St. Joseph Manf. Co.* v. *Daggett*, 84 id. 559,) and other cases heretofore decided by us, resting upon like principles, are totally unlike the present case. In none of them was it affirmatively shown that the trustee did not, or could not, as is here shown, have acted from an honest and unbiased judgment in selecting the medium of publication. *Flint* v. *Lewis, supra*, is "on all fours with this case." There, as here, although not in so marked a degree, the publication was made to prevent, instead of to give, notice, and the owner of the equity of redemption was lulled by the trustee into inaction in regard to making speedy payment. The transaction was condemned, and the sale set aside. No end of justice is thwarted by allowing a redemption here.

We are of opinion the court below erred in decreeing that complainant's bill be dismissed. Under the facts before .us the prayer of the bill in regard to. setting aside the several conveyances, and allowing a redemption, should be granted.

The decree of the court below is reversed, and the cause remanded for further proceedings consistent with this opinion.

*Decree reversed.*