PETER RAGOR

v.

JOHN A. LOMAX AND GEORGE F. HARRIS.

*Jurisdiction—Freehold—Bill to Redeem from Tax Title—Acquisition
of Tax Title by Mortgagee—Notice—Rights of Person in Possession.*

1.   This court has jurisdiction of a bill to redeem from a tax title on the
ground that it is held by the defendant merely as security, the freehold not
being involved.

2.   The mortgagee, whether in or out of possession, can not, by the
acquisition of a tax title, bar the right of the mortgagor to redeem.   Such
title when so acquired at once and by operation of law attaches to the secu-
rity and becomes liable to redemption on equitable terms.

3.   The purchaser of real estate, or any interest therein, is chargeable with
notice of the rights of any person in possession.

4.   In the matter of a legal title being affected by equities, a tax title, or
a title originating in a tax sale, stands the same as any other.

[Opinion filed July 13, 1887.]

APPEAL from the Superior Court of Cook County; the
Hon. HENRY M. SHEPARD, Judge, presiding.

Statement by MORAN, J.   Appellant and one John Ragor,
being the owners of certain real estate situate in the Lafram-
boise Reserve, on December 27, 1873, conveyed the same by
trust deed to Elias Greenbaum to secure appellant's note for
$11,000, payable to his own order three years from date,
indorsed by him in blank and delivered to said Greenbaum.

In 1875 John Ragor conveyed his interest in the land to
appellant, and by regular transfer one Charles Heper became
the legal holder of the note.   The trust deed of Greenbaum,

among other things, contained a covenant that the grantors would pay all taxes and assessments to be levied on the land, and in case of neglect or refusal of the grantors to pay such taxes, then it was provided that the trustee or " the holder of said note pay such taxes or assessments. And all moneys thus paid, with interest thereon, shall become so much additional indebtedness secured by this deed of trust and to be paid out of the proceeds of sale of the lands and premises " therein conveyed, if not otherwise paid by said party of the first part. In September, 1876, the land conveyed, except five acres thereof, was sold for taxes of prior years to one Nichols, who took a tax deed of the land so sold on March 22, 1879. On August 16, 1879, said Charles Heper, the owner of said note, for the purpose of protecting his security upon the premises under the deed of trust, purchased from Nichols and took a deed from him for all the interest said Nichols acquired by said tax deed. Heper held said note and the said tax title until June 10, 1882, when he sold the note to John A. Lomax and also transferred to him by deed the tax title. Lomax paid the principal due on the note, which at that date was $6,000, and interest due thereon, some $880, the amount Heper had paid for the tax title, $400, and interest on said sum from date of purchase, $111.66, the taxes that had been paid by Heper for the years 1880 and 1881, and interest thereon, and some costs attending release, etc., in all $7,521.70.

On or about the 23d day of June, 1882, appellant, by his attorney, offered to Lomax the amount due on the note, principal and interest, and the other amounts which had been paid for taxes, etc., and requested Lomax to deliver up the note, and execute a quit-claim deed to appellant of the property covered by the tax title. Lomax refused to execute any deed for the land unless the amount of a judgment which he held against Peter Ragor was paid to him, and appellant declined to pay said judgment.

On June 24th, the next day after said offer, Lomax made a deed for the land covered by said tax title to George F. Harris, for the consideration, as testified by said Harris and Lomax, of $1,250 cash. Harris certified that he did not know that

Lomax was the holder of note secured by trust deed upon the property. Lomax told him nothing but that he had a tax title of the property, which he would sell, and Harris bought it without any examination of the title, as he knew what tax titles were. He went to look at the property, and saw there was a house on it, but made no inquiries. About June 24, 1882, Lomax transferred the note to one William Kolze, taking Kolze's note, payable in six months, in payment therefor, and on July 20, 1882, said Kolze caused a trustee's notice of sale of the land to pay said note, to be published in accordance with the provisions of the trust deed. Before the day of sale Ragor paid the note and interest to Kolze, and Kolze with the money paid his note to Lomax. The bill herein was filed in April, 1884, to redeem from the tax title held by Harris, offering to pay to Harris or to Lomax, whoever should be found entitled thereto, the amount paid by Lomax for the tax title, with interest thereon, alleging that Lomax took said tax title as part of his security when he purchased the note from Heper, and knew that Heper so held it, and that Harris took it from Lomax with notice that it was held as security by him, and alleging that at the time of the purchase by Lomax and by Harris of said tax title appellant was, by his tenant, in the open and notorious possession of the land covered by said deed, charging that the transfer from Lomax to Harris was in bad faith, and for the purpose of defrauding appellant and offering to do equity. Lomax and Harris answered, claiming that Lomax was the owner of the land under the deed from Heper, and that he sold and deeded it to Harris in good faith, who took it without knowledge that there was any trust deed against the property in the possession of Lomax, and Harris claims to be the owner of the property under said tax title, and denies that same can be redeemed or that complainant has any rights therein.

Upon the hearing the facts appeared as above stated, and the court, declining to compel the redemption from the tax title held by Harris, dismissed the bill for want of equity, and the decree is brought to this court by appeal and error assigned.

Messrs. B. W. Ellis and Geo. W. Smith, for appellant.

Messrs. P. T. McElherne, E. S. Cummings and Robert Hervey, for appellees.

Moran, J.   A motion to dismiss this appeal was made and argued on the ground that the question of freehold was involved in the case.   The freehold, as we understand, is not in dispute in this case.   The validity of the tax title is not assailed.   The claim is that the tax title is held under such circumstances, not as make it invalid, but as render it subject to be redeemed by the appellant as being in fact a mortgage instead of an absolute title.   In essence the attempt is to declare a title apparently absolute, to have been held as security merely, and therefore to be subject to redemption.   Hollingsworth v. Koon, 113 Ill. 443; Gage v. Starkweather, 103 Ill. 559.

This court has jurisdiction, and we must therefore consider and determine the questions arising on the record.

It has been for a long time well settled that a mortgagee in possession can not acquire a tax title and set the same up against the right of the mortgagor to redeem.   Brown v. Simons, 44 N. H. 475.

And payment of taxes by such mortgagee after condition broken, is not such a payment as is required to constitute a bar under the Statute of Limitations of seven years' possession and payment of taxes.   Chickering v. Failes, 26 Ill. 507, 519.

But whether a mortgagee out of possession may acquire a title at tax sale, whereby the mortgagor will be barred of his equity of redemption, is a question about which there is a conflict of authority.   The earlier cases seem to hold that there is no such relation of trust between the mortgagee not in possession and the mortgagor, as will preclude the mortgagee from purchasing the outstanding title and setting the same up against the mortgagor to bar his right to redeem. Jones on Mortgages, Sec. 713.

An examination of the later authorities, however, leads to the conclusion that the clear tendency of decision is toward

holding that, so far at least as relates to tax titles, a mortgagee, whether in or out of possession, will not be permitted to acquire and hold such title against the mortgagor. This seems to us to be the true doctrine and to have a solid basis of foundation in the relations of the parties. It may, it is true, in all cases be the duty of the mortgagor, as between himself and the mortgagee, to pay the taxes upon the land, and to keep the same free from liens which will affect the security of the mortgagee. But while it may not be the duty of the mortgagee to pay the taxes it is clearly his right to do so, for he has a manifest interest in the protection of his mortgage title. In the land both the mortgagor and the mortgagee have an interest. It is a fund, the protection of which is for the benefit of both, but the lien of the State for taxes is superior to the right of each, and if one or the other does not discharge it, the land will be sold and the interest will be extinguished. The mortgagee has an interest in discharging the tax lien and a right to discharge it, and the sum that he pays to discharge it goes to increase the amount of his incumbrance, even if not so agreed in the mortgage, for it is the duty of the mortgagor to protect the security he has given. But in this case by the terms of the security the taxes paid by the mortgagee are to be treated as an addition to the indebtedness and to bear interest at ten per cent. The mortgagee then having the right to pay, though not bound to do so, and the means of compelling repayment, if he does pay, is it not just to say that he shall be held to have paid the tax or purchased the tax title for the purpose, not of cutting off the right of the mortgagor, but of securing himself—that his act shall inure to the protection and not to the destruction of the regular title? Judge Cooley, in his work on Taxation, 347, says: "It can not be said in such case that either mortgagor or mortgagee is under no obligations to the government to pay the tax. On the contrary, the tax being one that purposely is made to override the lien of the one as well as the title of the other, it might well, as it seems to us, be held that neither mortgagor nor mortgagee was at liberty to neglect the payment, as one step in bettering his condition at the expense

of the other, but that the presumption of law should be that the party purchasing did so for the protection of his own interest merely." In Maxfield v. Willey, 46 Mich. 255, in the opinion of the court written by the learned Judge whose words are above quoted, it was said: " When the mortgagee, instead of making payment of the taxes, makes a purchase of the land at tax sale, either in his name or in the name of another person who has his money for the purpose, we have no doubt of the right of the mortgagor to have the purchase treated as a payment and to compel the cancelment of the certificate or deed on refunding the amount paid with interest. * * * Neither party to a mortgage can be suffered, against the will of the other, to buy at a tax sale and thereby cut off the other's interest."

In Woodbury v. Swan, 59 N. H. 22, we find the principle under discussion thus admirably stated: " Mortgagor and mortgagee have a unity of legal interest in the protection of their title against a sale for non-payment of taxes, and against outstanding tax titles, and it is not equitable that either of them should act adversely to the other in the acquisition and use of such titles. Therefore, the mortgage contract comprises an implied agreement that while either party may buy a tax title for the preservation of his right in the mortgaged property, neither of them will buy a tax title for the extinguishment of the title, in the maintenance of which they, as well as partners and tenants in common, are in law jointly concerned."

The doctrine stated in the cases above cited finds general support in the following cases, and will be found applied under varying conditions of fact. Martin v. Swofford, 59 Miss. 328; McLaughlin v. Grier, 48 Miss. 175; Fair v. Brown, 40 Iowa, 210; Middletown Bank v. Bacharach, 46 Conn. 513; Fish v. Brunnette, 30 Wis. 102.

Though the question now being considered can not be said to have been directly decided by our Supreme Court, yet from the language used by the court in cases involving the principle, the conclusion is justified that the court takes the view of the relation of mortgagor and mortgagee announced by the authorities above cited.

In Moore v. Titman, 44 Ill. 367, the mortgagee had taken a title under a judgment against a mortgagor, which was a prior lien to the mortgagee, and set it up to bar the interest of the mortgagor. The court on a review of the evidence found and held that the outstanding title was in fact purchased by the mortgagee under an agreement with the mortgagor that it should be so purchased, and that it should be subject to redemption, and that but for the agreement the mortgagor might have made other arrangements for its purchase, and therefore a court of equity would enforce the agreement.

From what is said in the opinion, however, there is little doubt that the court would have granted the relief if there had been no agreement between the parties with reference to it. The remark of Lord Nottingham, that in obtaining the renewal of a lease, " the mortgagee but grafts upon his stock, and it shall be for the mortgagor's benefit," is quoted with approval, and it is said by the court: "There are many acts which third parties might perform, and thus acquire interest in the estate of the mortgaged property, the performance of which by either party to the deed would give him no new absolute right as against the other. Their relations to each other, in reference to the property, is such that in many things their acts are held to be performed for the benefit of the estate and to preserve the security." It is also said in the same opinion that, "like a trustee, a mortgagee can not affect the right of the mortgagor by purchasing the property at a sale for delinquent taxes." Though this was said where the point was not before the court, yet we deem it authoritative, as the doctrine announced was applied in a subsequent case, Pratt v. Pratt, 96 Ill. 194, where the contention was not that the tax title could not be set up, but that the tax certificates purchased by the mortgagee could not be charged up against the mortgagors. The court said: "It was as much the duty of Pratt to pay the taxes to protect his lien as for Miller and wife [who as to Pratt stood in the relation of mortgagees] to preserve theirs, and hence when paid by the Millers, *that lien became a lien on the land, of the same character as that previously held by them.*" See also, Moore v. Wood, 100 Ill. 451, where the same doctrine finds recognition.

We conclude then that when Heper purchased the outstanding tax title from Nichols, said title at once and by operation of law attached itself to the security and became liable to redemption on equitable terms.  As a matter of fact such was the intention with which Heper bought it.  He had no idea of acquiring a title adverse to the trust deed or mortgage title held for him by the trustee Greenbaum, but says that he bought only for the better protection of his interest under that instrument, and immediately charged up as additional indebtedness against the mortgagor the amount paid by him for the tax-title interest.  Thus the actual intention of the mortgagee accords with the intention which the law would conclusively impute to his act, and the intent as well as the legal effect of the purchase was to create for the mortgagor a right of redemption from the tax title, and any person thereafter taking said title from the mortgagee, would take it charged with all the equities existing in favor of the mortgagor.  We have little doubt from the evidence that Lomax, when he purchased the note and tax title from Heper, well understood that Heper held the tax title as security, but whether he knew it in fact or not, he was charged by the law with such knowledge.  Besides, when he purchased the note he became the mortgagee, and he no more than Heper could set up a tax title purchased with the note, or purchased subsequently while he held the note as adverse to the title of the mortgagor.  Nor could he relieve the tax title which he held as mortgagee from the equities attaching to it in favor of the mortgagor, or authorize the hostile assertion of it as adverse to the mortgagor's title by selling the tax title to another, and concealing from such other the fact that he held a mortgage against the land.  The mortgagor was in possession of the land by his tenant and such possession was notice of his rights, both legal and equitable, and whoever took a title to said land, whatever the origin of the title, took it subject to all the equities which existed against it and in favor of the party in possession, and as to which inquiry the party in possession would have brought information.  Webber v. Curtiss, 104 Ill. 309; Haworth v. Taylor, 108 Ill. 275.

Harris, before he purchased from Lomax, saw the land and saw that there was a dwelling house upon it. He had actual notice of the possession, and where there is actual notice of a fact, sufficient to put one on inquiry of leading to the truth, it will be regarded as good notice of the ultimate fact.

In the matter of a legal title being affected by equities, a tax title, or a title originating in a tax sa'e, stands the same as any other. Such a title may be the subject of a resulting trust, or of any other equity. The origin of a title is not the determining consideration. The equity arises from the circumstances under which the title is taken or held, and equities will attach at any point of time subsequent to the inception of the title, when the title is held under circumstances which give rise to such equities, and all subsequent grantees take subject to such equities while they are subsisting. It follows that the title was subject to redemption by Ragor in the hands of Harris and is so subject in the hands of his heirs, and therefore that the Superior Court erred in refusing to grant the prayer of the bill and dismissing it for want of equity. The case will therefore be reversed and remanded to the Superior Court, with directions to order that the legal title in said land shall be properly conveyed to appellant upon the payment by him to or for the use of the heirs of said Harris, of the amount which was paid by said Heper for the said tax title with interest thereon according to the terms of the trust deed from Ragor to Greenbaum. The claim of the heirs of Harris against Lomax, for the excess paid for the tax title, will be appropriate matter for a cross-bill between them, if that shall prove necessary.

*Reversed and remanded.*