## GOODWINE *v.* FLINT.

[No. 3,862. Filed June 25, 1901. Rehearing denied October 4, 1901. Transfer denied November 26, 1901.]

INTOXICATING LIQUORS. —*License.*—*Notice.*—*Publication.*—An applicant for a license to sell intoxicating liquors gave notice of such application in a paper purporting to be published in a village of the county sixteen miles distant from the town in which he proposed to sell, but which was printed in another county and mailed in bulk to a person residing in the village, who remailed the

papers to subscribers. Only three copies of the paper were sent to the township in which the applicant resided, and in the seven nearest townships thereto the circulation thereof did not exceed a dozen copies. It was further shown that the notice was published but once, and but one copy of the paper containing the notice came to the township, which copy was received by the applicant. Other newspapers of general circulation were printed and published in the county and the town where the applicant proposed to sell, and the applicant testified that his purpose in publishing the notice in said paper was to defeat the people of the township who opposed the granting of the license. *Held*, that the notice was insufficient under §7278 Burns 1901.

From Tippecanoe Circuit Court; *W. C. L. Taylor*, Judge.

Frank Flint was granted a license to sell intoxicating liquors by the circuit court on appeal from the board of commissioners refusing a license, and William H. Goodwine, who was a defendant in the proceeding, appeals. *Reversed.*

*J. F. Hanly*, and *W. R. Wood*, for appellant.

*J. F. McHugh*, for appellee.

HENLEY, J.—Appellee was an applicant for license to sell intoxicating liquors in less quantities than five gallons at a time, to be drank on the premises where sold. The room described in his application is in the town of West Lebanon, in Pike township, Warren county, Indiana. The board of commissioners of Warren county refused to grant the license. Appellee appealed to the circuit court of said county and in said court filed his motion and affidavit for a change of venue from the county. The cause was venued to Tippecanoe county. Appellant appeared in the Tippecanoe Circuit Court and filed his petition to be made a party defendant in said cause, which petition was granted. Appellant filed an answer in abatement, to which the appellee filed a general denial. The issue so formed was tried and a judgment rendered thereon in favor of appellee refusing to abate said action and granting appellee the license as prayed. Appellant appeals from this judgment of the

court.  The question is presented by the motion for a new trial, assigning as a reason the insufficiency of the evidence to sustain the finding.  In order that the real issue upon which the evidence was introduced may fully and correctly appear, we set out a copy of the duly verified answer in abatement, as follows:  "William H. Goodwine, intervening petitioner and by leave of court defendant in the above entitled cause, by way of plea and answer in abatement in said cause, avers that he, the said William H. Goodwine, is now, and has been continuously for more than ten years last past, a resident and legal voter, in the town of West Lebanon and the township of Pike, in the county of Warren, in the State of Indiana; that the said town of West Lebanon is an incorporated town; that the said town contains 800 inhabitants, and is the same town, and that Pike township is the same township named in the application of said Frank Flint for license to sell intoxicating liquors and filed on the 31st day of August, 1900, in this cause, in the office of the auditor of Warren county, Indiana, and that said town and said township are the same town and township where said applicant proposes to conduct the sale of said liquors if the said license be granted under said application; that the said applicant, Frank Flint, resides in said town of West Lebanon and has resided there for more than a year last past; that a majority of the legal voters of said town and township are opposed to the sale of intoxicating liquors at retail within the territorial limits of said township and town, and have within the last three years from time to time excluded such sale from said territory, and prevented persons from obtaining license to retail such liquors in said territory by appearing before the board of commissioners of said Warren county and filing remonstrances in said commissioners' court against the granting of such license which said remonstrances were duly signed by more than a majority of the legal voters of said town and township; that said applicant had been defeated and prevented from obtaining such

license by such remonstrance prior to the application in this cause, and that said applicant well knew at the time of making the application in this cause and at the time of giving the notice hereinafter mentioned, that a majority of the legal voters of said town and township would, if they were given notice of his intention to apply for such license, file a remonstrance in said court against said license being granted under said application, and that his said application would thereby be defeated; that said applicant is not a fit person to be charged with the sale of such liquor under such license and is not a person of good moral character; that knowing these facts and fearing that he would be prevented from obtaining license under said application by a remonstrance from a majority of said legal voters of said town and township, said applicant, fraudulently and corruptly, and for the purpose of preventing this petitioner and all other citizens of said township and town from knowing or receiving information that he had applied for such license, caused the notice of his intention to make such application to be published for a single time only in a newspaper known as the Independence Itemizer; that the said Independence Itemizer, at the time said notice was published therein, purported to be published in the village of Independence in said county of Warren, but, your petitioner is informed and believes, said newspaper was not then printed or published in said Warren county, but was printed and published in the state of Ohio; that said village of Independence is an unincorporated village of less than 200 inhabitants and is situated in the country at a point without railroad connection, sixteen miles distant from said town of West Lebanon and said township of Pike, and in a remote part of said Warren county; that said Independence Itemizer is a paper of limited circulation in Warren county, and at the time of the publication of said notice had less than 200 *bona fide* subscribers in said county and had no subscribers and no circulation in said town of West Lebanon and said town-

ship of Pike; that at said time only two copies of said paper went into said town of West Lebanon and said township of Pike, and that one of said copies, prior to the date of said publication and the week following said publication was received by the postmaster in said town, and another by the publisher of the newspaper in said town of West Lebanon; that the notice of the intention of said applicant to apply for license in this cause, was published in said Independence Itemizer but a single time, and that said publication was made on the 10th day of August, 1900, and that no copy of the issue of said paper containing said notice was sent into the township of Pike or the town of West Lebanon, and that neither the postmaster nor the publisher of the paper in said town received any copy of the paper containing said notice; that said applicant gave no other notice of his intention to apply for license than the notice given in said Independence Itemizer and that he corruptly and fraudulently caused the publisher of said paper to withhold the copies of the issue of said paper containing said publication from the said postmaster and the said publisher of said newspaper in said town of West Lebanon, and said copies were withheld by said publisher and not sent to said town; that the purpose and intention of said applicant in publishing said notice in said Itemizer and in having the publisher withhold the copies of said paper which contained said notice from circulation in said town of West Lebanon and said township, was to prevent this petitioner and the other legal voters in said township and town and the citizens thereof from obtaining any information or knowledge that said applicant intended to file the application for license filed in this cause; that the said town of Williamsport is situated within six miles of the said town of West Lebanon and that said town of Williamsport is the county seat of said Warren county, and is a town of 1,200 inhabitants, and on the date of the publication of said notice in the said Independence Itemizer, there were two weekly

newspapers of general circulation in said county printed in the English language and published in said town of Williamsport, to wit, the Warren Review and the Warren Republican; that each of said papers were old and well established papers and at the date of the publication of said notice were generally read by the people of said county and of the town of West Lebanon and township of Pike, and each of them had a circulation in said county of 2,000 copies and in said township and town of more than 100 copies; that on said 10th day of August, 1900, there was published and printed in the said town of West Lebanon a weekly newspaper of general circulation throughout said county and particularly in said township of Pike and in said town of West Lebanon, and that said weekly newspaper was then and there printed in the English language. That at the said time said newspaper was known as the West Lebanon Gazette and the same was an old established paper and then and there had a circulation of 1,500 copies in said county and 300 copies in said township and town; that your petitioner and the legal voters in said township of Pike and said town of West Lebanon had no actual notice or knowledge that said applicant intended to apply to said board of commissioners for license to sell intoxicating liquors in said town, nor that he intended to file or have filed his application in this cause until the same came up for hearing before the board of commissioners and at a time when it was too late to file a remonstrance on behalf of a majority of the legal voters of the said town and township, and too late to file a remonstrance for cause against the granting of said license by the said board under said application;  *  *  *  wherefore, said defendant prays that this action may abate."

The evidence presented upon the issue so tried was in every material part uncontradicted, and established the following facts: That the town of West Lebanon has a population of about 800; that a newspaper known as the "West Lebanon Gazette" is published in said town, and was at the

time appellee gave notice of his application for license; that said newspaper has a general circulation of 600 weekly copies in said county of Warren, 400 of which are in the township wherein West Lebanon is situate; that the town of Williamsport in said county is situate on a railroad six miles from West Lebanon, which town has two newspapers, the Warren Review and the Warren Republican, the first with a circulation of about 1,400 in the county and about 100 in West Lebanon, and the second with a circulation of about 1,100 in the county and seventy-five in the town of West Lebanon; that the town of Independence, in Warren county, is fifteen miles from West Lebanon; that it is not incorporated, and has a population of about 150; that the "Independence Itemizer" is a newspaper printed in Elletts-ville, in Monroe county, Indiana; that it is mailed in bulk to A. E. Yount at Independence, Indiana; that said Yount takes said papers and remails them to its various subscribers; that there are twelve townships in Warren county; that the circulation of said paper is distributed in said twelve town-ships as follows: In Pike township, where appellee's license would apply, three copies, one to appellee, one to John H. True, and one in exchange with the West Lebanon Gazette; in Washington township, in which the town of Williams-port is situated, six copies; in Adams township, nine; in Medina township, nine; in Prairie township, none; in Jor-dan township, none; in Pine towship, one; in Steuben town-ship, none; in Mound township, none; in Kent township, none; in Liberty township, none; the circulation in Warren township, in which the village of Independence is situated and where the paper is mailed, is not definitely shown; but it is shown that in the seven townships nearest Pike town-ship, in said county, the circulation of said paper all told did not amount to as much as one dozen copies. The evi-dence further shows that the notice was published but once, and that on the 10th day of August, 1900. But one copy of the issue of the "Itemizer" which contained the notice of

appellee's application for license found its way into Pike township, and that was received by appellee. The evidence further shows that appellee stated under oath at the hearing of his application before the board of commissioners of Warren county that his purpose in publishing the notice of his application for license in the "Independence Itemizer" was to defeat the people of Pike township, who were opposed to the granting of license.

It is provided in §7278 Burns 1901, §5314 Horner 1901, that "Any male inhabitant over the age of twenty-one years, desiring to obtain license to sell intoxicating liquors, shall give notice to the citizens of the township, town, city, or ward in which he desires to sell, by publishing, in a weekly newspaper in the county, a notice, stating the precise location," etc. In order to make plain what the legislature intended should be the legal requirement of all notices by publication, it is provided by §1299 Burns 1901, §1279 Horner 1901: "Publications of legal and other official matters printed in the English language shall be lawful if published in any newspaper of general circulation published in the county."

Notice, by whatever manner given, is always for the information of the interested parties. In a case of this character, the notice should be at least such a notice as would be reasonably certain to inform the citizens of Pike township, in said county, of appellee's intention to apply for license to sell intoxicating liquors in their midst. The citizens of Warren county outside of Pike township had no interest in appellee's application which would be affected by his failure to notify them; but in Pike township each voter had a right to appear and contest the granting of license to appellee, and the law intends that the legally interested parties shall be protected in their rights. As was said by Howard, J., in *Lynn* v. *Allen,* 145 Ind. 584, on p. 589: "The purpose of the statute, namely, that notice may reach the party intended, should be kept in view. So it has been held that

where the publication has been made by design in an obscure paper, with the obvious intent to avoid giving actual notice to the party in interest, the proceedings based upon such notice may be held voidable, even though the letter of the statute has been observed."

The notice in the case at bar was not only published with the intent to avoid giving actual notice to the voters of Pike township, but the paper in which it was published was not of general circulation, that particular issue having *no* circulation amongst the parties in interest, and wholly failing of the purpose for which notice by publication is intended. The notice not only did not comply with the plain meaning of the statute, but was fraudulent in its purpose and design. Proceedings for a license to sell intoxicating liquors under our statute are judicial proceedings. *Castle* v. *Bell,* 145 Ind. 8; *Halloran* v. *McCullough,* 68 Ind. 179; *List* v. *Padgett,* 96 Ind. 126. And notice is absolutely necessary to confer jurisdiction upon the court.

In *Webber* v. *Curtis,* 104 Ill. 309, the question discussed by the court was whether or not the appellant had notice, actual or constructive, of the sale of certain land under a trust deed. It was stipulated in the trust deed that four weeks' notice of the time and place of the sale be given by publication in any of the weekly newspapers that may be published in Champaign county, Illinois, printed in the English language. The only notice given by the trustee was by a publication in an obscure newspaper published in a small village eighteen or twenty miles from the land, said newspaper having but eight subscribers in the township where the land was situated. The court said in passing upon the question: "The land conveyed by this trust deed lies in Urbana township, adjoining the city of Urbana, the county seat of Champaign county. The payee and owner of the note thereby secured resided in the state of Florida. The trustee resided in the city of Urbana, and his place of business was in the city, and about one-fourth of a mile from

the land. Complainant and her husband resided on the land.· There was published at the time this notice was published, in the same building, and immediately over the trustee's place of business, the 'Champaign County Herald', a weekly newspaper, having a circulation of more than 1,800 copies, between 400 and 500 of which were in Urbana township. At the same time there was also published at the city of Champaign, something like one mile or one milé and a half from the land, the 'Champaign County Gazette', a weekly newspaper having a circulation of about 2,000 copies in the county, 298 of which were in Urbana township. But Rantoul, where the notice was published, is in a different township, and is some eighteen or twenty miles distant from the land. The 'Press', in which the publication was made, has, in all, a circulation of only 445, of which 280 are to subscribers in Rantoul township. The bulk of the remainder is to subscribers equally remote from the land, eight subscribers only—among whom was not included complainant or any member of her family—were in Urbana township, and in the townships adjoining Urbana the circulation was but nominal. No reason is given why the notice was not published in a paper published in Urbana or Champaign. The trustee has not attempted to explain or defend his conduct in this regard, but seems to rest it entirely upon the ground that he had the arbitrary right to do as he did, which, we have seen, is not accurate. Had the land been located at or in the immediate vicinity of Rantoul, a reasonable presumption would be that those seeking investments in real estate in that neighborhood would inquire of such sources of local information as would be obtainable, and, among other sources, look to the columns of the local paper for advertisements. But who, desiring to purchase property in Urbana, would have thought the proper source of information in regard to what was to be sold was the columns of the papers published in the remote villages of the county ? To test the good faith of this publication, let it be supposed that Curtis had been

the owner of the land, and compelled to sell it at public auction within a limited time, does any one suppose that he would have passed over the papers in Urbana and Champaign and advertised in the 'Rantoul Press'? Why should any honest man have supposed that such a publication was better, or even as good, as one published in Urbana or Champaign? It has not the advantage of proximity to locality, and its circulation (and therefore its opportunity to give information) is less than one-fourth; in general, and as respects locality of the land, less than one-fiftieth. No exceptional circumstance is shown to have existed which made this publication desirable, and even the selfish and insufficient excuse of previous business arrangements is excluded by proof 'that the publisher had not, previous to that notice, received any patronage, printing or work of any kind from said Curtis.' If Curtis would not have made such a publication had his own property been at stake, he can not have acted in good faith in making it as a trustee. At first blush, the conduct of the trustee in this regard is so repugnant to the ordinary apprehension of duty and honesty, that it calls for explanation."

The explanation here offered, and the only one offered by appellee, is that he intended to prevent a remonstrance against him. It seems to us that the publication was intended by appellee to prevent instead of to give notice. The motion for a new trial ought to have been sustained.

Judgment reversed, with instruction to the trial court to sustain appellant's motion for a new trial.