**In re CREDIT SERVICE, Inc.**

**No. 9340.**

District Court, D. Maryland.

May 1, 1941.

See, also, 31 F.Supp. 979.

Carlyle Barton, of Baltimore, Md., for trustee.

John H. Skeen, of Baltimore, Md., trustee in bankruptcy.

Leon Pierson and G. W. S. Musgrave, both of Baltimore, Md., for certain petitioning creditors.

CHESNUT, District Judge.

In the above bankruptcy case the question now to be decided is what constitutes "the first meeting of creditors" within the meaning of that phrase appearing in Chap. XI, § 355 of the Chandler Act, 11 U.S.C.A. § 755, the whole of which reads as follows:

"§ 755. *Allowance of claims upon order to proceed with bankruptcy.*

"Upon the entry of an order under the provisions of this chapter directing that bankruptcy be proceeded with, only such claims as are provable under section 103 of this title shall be allowed and, except as provided in section 754 of this title, claims not already filed may be filed within three months after the first date set for *the first meeting of creditors,* held pursuant to section 91 of this title, or, if such date has previously been set, then within three months after the mailing of notice to creditors of the entry of the order directing that bankruptcy be proceeded with. July 1, 1898, c. 541, § 355, as added June 22, 1938, c. 575, § 1, 52 Stat. 910." (Italics supplied.)

More particularly the question is whether the meeting of creditors (the first to be held) under Chap. XI of the Bankruptcy Act constitutes "the first meeting of creditors, held pursuant to section 91 of this title [11 U.S.C.A.]" (section 55 of the Act itself). · The answer to the question will determine the rights of certain creditors, whose claims the referee held were filed too late, to participate in the distribution of the assets of the bankrupt. The question arises out of the proceedings heretofore taken in the case which will now be stated.

On October 22, 1939, Credit Service, Inc., a Delaware corporation having its principal office and activities in Baltimore City, Maryland, filed in this court a petition for an "arrangement" under Chap. XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., and the proceeding was at once referred to the referee as specially provided for in the Act. Immediately the referee mailed written notices to the creditors whose names appeared in the lists furnished by the debtor, that there would be a meeting of creditors held on November 6, 1939. The meeting was accordingly held and an adjourned meeting was afterwards held on December 13, 1939, pursuant to written notice. At these meetings or one of them, a creditors' committee was elected and a trustee, Mr. John H. Skeen, a Baltimore lawyer, nominated; but as the debtor was continued in management of its own business temporarily, the trustee had no occasion to then qualify. The meetings were held pursuant to 11 U.S.C.A. § 734, which provides for ten days' notice by mail to the debtor and creditors and other parties in interest, but does not require publication of notice of the meeting; and apparently there was no publication of notice for these meetings. The nomination of Mr. Skeen as trustee was pursuant to 11 U.S.C.A. § 738. By July 2, 1940, it had become apparent that there could not be a confirmation of an "arrangement" for the debtor,

and on that date an order was entered adjudging the debtor a bankrupt, directing that bankruptcy be proceeded with, and appointing John H. Skeen, Esq., trustee in bankruptcy. (See 11 U.S.C.A. § 776).

The referee was of the opinion that the meeting of creditors which had already been held under the Chapter XI proceeding constituted "the first meeting of creditors" within the meaning of the phrase in section 755, supra. Acting on this construction the referee did not call a "first meeting of creditors" in ordinary bankruptcy, as provided for by section 91 of title 11 (section 55 of the original Act), but in lieu thereof gave the alternative written notice by mail to creditors provided for in section 755; that is to say, the referee notified the creditors by mail in accordance with the list furnished by the bankrupt that their claims if not already filed, must be filed within three months. This notice was dated July 22, 1940, and the three months thereafter expired on October 22, 1940. A large majority (more than 80%) in amount of claims were filed in due time in accordance with this notice; but about 75 or more creditors holding claims aggregating approximately $150,000 have offered their claims for filing subsequent to October 22, 1940, and all such claims have been rejected by the referee because not filed in due time. A number of creditors whose claims have thus been rejected by the referee have petitioned for review, and the case has been submitted for decision on the referee's memorandum filed January 3, 1941, and the argument of counsel on behalf of some of the petitioners for review. The only creditors of the bankrupt are the holders of negotiable unsecured bonds or debentures in the aggregate par value of $5,000,000. 2704 creditors filed claims on their debentures before October 22, 1940, amounting to $4,259,329.97 (in some cases including interest).

I have reached the conclusion that the meeting of creditors held during the currency of the Chap. XI proceeding is not "the first meeting of creditors, held pursuant to section 91 of this title" (section 55 of the original Act). I will briefly state the reason for this conclusion, which results from a comparison and study of various sections of the original bankruptcy provisions with related provisions of Chap. XI.

A comparison of sections 91, 94 and 25 of title 11, relating to the first meeting of creditors in ordinary bankruptcy and what may be done at such meeting, and the notice therefor required, with sections 734 to 738 and 792 (Chap. XI sections) reveals many similarities but some differences. One of the principal arguments, in support of the view taken by the referee in this case, is that substantially all has been accomplished at the meetings of creditors heretofore held in this case during the currency of the Chapter XI proceeding, that could now be accomplished by holding another *first meeting* of creditors in ordinary bankruptcy. However, it will appear from a comparison of the related sections just mentioned that the objectives of the two classes of meetings may be quite different. Under the Chap. XI proceeding, which can properly affect only unsecured debts, it is obvious that the main object is to determine whether the particular arrangement proposed is advantageous for creditors so that they can intelligently vote thereon; but when the estate is being administered in ordinary bankruptcy, the questions arising may often be much wider in scope. And it is important to note that while publication is required for "the first meeting of creditors" in ordinary bankruptcy, seemingly no publication is required for the meetings of creditors under Chap. XI, and I understand that no publication was in fact made in this case. The matter of publication is a factor of particular importance in this case, as the holders of the debentures are numerous and widely scattered, and the list of names and addresses of the holders kept by the bankrupt is far from complete and accurate, as the debentures were negotiable and in many instances have been transferred by the original holders to others without transfer of registry. A number of the creditors whose claims were rejected by the referee assert that they did not receive his written notice. It may also be noted that the phrase "*the* first meeting of creditors" as applicable to ordinary bankruptcy (11 U.S.C.A. § 91) has long been a well known term of established meaning, in verbal contrast with which the meeting of creditors provided by 11 U.S.C.A. § 734 calls for "*a* meeting of creditors" (Italics supplied).

Apart from these considerations the particular phraseology of section 755 seems to require the conclusion stated. The obvious purpose of this section is to limit the time within which claims may be filed, in order that there may be a reasonably

speedy termination of the whole proceeding. In ordinary bankruptcy 11 U.S.C.A. § 93, sub. n, section 57, sub. n, limits the time for filing claims to "within six months after the first date set for the first meeting of creditors". 11 U.S.C.A. § 754 (a part of Chap. XI) provides in effect that if the whole proceeding originated in ordinary bankruptcy which was not superseded by the Chap. XI proceeding until more than six months after the first date set for the first meeting of creditors, then (with exceptions not here material) claims not previously filed within the six months' period shall not be allowed to participate in proceedings under Chap. XI or thereafter in ordinary bankruptcy if and when reinstated. Section 755 also excludes such belated claims, but provides in effect that, in the event the six months' period has not expired before ordinary bankruptcy was suspended, claims not already filed "may be filed within three months after the first date set for the first meeting of creditors, held pursuant to section 91 of this title [section 55 of the original Act], or, if such date has previously been set, then within three months after the mailing of notice to creditors of the entry of the order directing that bankruptcy be proceeded with".

11 U.S.C.A. §§ 721 and 722, permits the filing of a Chap. XI proceeding either in a pending ordinary bankruptcy proceeding, or as an initial proceeding; and in either case, the court may order ordinary bankruptcy to be proceeded with. 11 U.S.C.A. § 778. If the Chap. XI proceeding suspends a pending ordinary bankruptcy case, it may happen that the suspension occurs (1) before or after the first date has been set for a first meeting of creditors; and (2) if after the date set, then before or after the expiration of six months. We thus have four variant situations for which section 755 furnishes the special period of limitation for filing claims.

1. Where ordinary bankruptcy is suspended *before* a date is set for the first meeting of creditors;

2. After it is set, and *before* the expiration of six months;

3. After it is set and *after* the expiration of six months; and

4. Where Chap. XI was the initial proceeding.

In (3) the time limitation has already expired. In (2) the limitation is "within three months after the mailing of notice to creditors of the entry of the order directing that bankruptcy be proceeded with". And in (1) and (4), as no date for a first meeting has previously been set, one must thereafter be set, and claims "may" (must) be filed within three months thereafter.

11 U.S.C.A. § 776(2) provides when, in an initial Chap. XI proceeding, an order is passed adjudging the debtor a bankrupt and directing that bankruptcy be proceeded with, it shall be so proceeded with "pursuant to the provisions of this title"; and 11 U.S.C.A. § 702 provides that the provisions of Chapters 1 to 7 of title 11 "shall, insofar as they are not inconsistent with or in conflict with the provisions of this chapter, [11] apply in proceedings under this chapter". 11 U.S.C.A. § 93, sub. n, section 57, sub. n of the Act, is one of the provisions of chapters 1 to 7. It allows six months for the filing of claims after the first meeting of creditors; but it is not applicable here because section 755 is necessarily inconsistent therewith, in that it provides a different limitation of time for filing claims in the special situation of this particular case, that is, where the proceeding was begun under Chap. XI and later transferred to ordinary bankruptcy. And section 93, sub. n is expressly made to apply only when not "otherwise provided in this title". See also Corden Corp. v. Williams, Trustee, 9 Cir., 93 F.2d 758, 35 A.B.R.,N.S., 653. As already stated, the evident intention of section 755 is to wind up the proceeding with reasonable expedition, and it was doubtless within contemplation that considerable time would already have elapsed in the Chap. XI proceeding. Of course it is possible to conceive occasional cases where, when the first proceeding is under Chap. XI, the court may order ordinary bankruptcy within a very short time, say less than a month; and the first meeting of creditors under section 91 may be held so promptly thereafter that creditors will not in fact have had the period of six months within which to file claims. Such a situation was actually presented in the case of Hi-Flier Mfg. Co. v. Haberman, 2 Cir., 115 F.2d 918; but the court nevertheless held that section 755 was controlling, and pointed out that the six months' period allowed by 11 U.S.C.A. § 93, sub. n was applicable only "except as otherwise provided in this title." See also Re Kentucky Mfg. Co., D.C., 36 F.Supp. 641; Re Dorb The Chemist Pharmacies, D.C., 29 F.Supp. 832; Re Ervin Service Corp., D.C., 33 F.Supp. 653; 11

764

U.S.C.A. § 638 (for parallel limitations in Chap. X).

While the precise language of section 755 is perhaps not so happily expressed as might have been desirable in view of the several possible contingencies above mentioned, it nevertheless seems reasonably clear that the first meeting of creditors therein referred to, which sets running the three months' period, must mean the first meeting of creditors under section 91 held ten days after notice by mail *and publication,* and *after* adjudication in bankruptcy. No such date for a first meeting has yet been set in this case and, therefore, the time limit for filing claims has not yet begun to run; and the alternative provided for in section 755, which was acted on by the referee in this case, by mailing notices to creditors that they must file their claims within three months, is not effective to bar the claims here involved.

The precise question here discussed seems not to have been heretofore adjudicated; but the conclusion reached would seem to be fairly indicated by the reasoning of Circuit Judge Clark in his opinion in the Hi-Flier case, supra; and is categorically supported by the very recently published Vol. 8 of Collier on Bankruptcy, 14th Ed. 1941, p. 1011, where the author says:

"The first meeting of creditors held pursuant to section 55 should not be confused with the initial meeting of creditors called pursuant to section 334 of Chapter XI" (11 U.S.C.A. § 734). "In a section 322 case" [our case here] "there can be no meeting held or called pursuant to section 55 during the administration of the case under Chapter XI, nor could such a meeting have been held prior to the section 322 petition since such a petition can be filed only if no bankruptcy proceeding is pending. But it is an obvious conclusion from section 355 that if an order directing bankruptcy is entered in a section 322 case, a date must thereafter be set for a first meeting of creditors held pursuant to section 55. Hence in every section 322 case the time within which claims may be filed in the subsequent bankruptcy proceeding is three months after the first date set for the first meeting of creditors held pursuant to section 55".

See also Remington on Bankruptcy, Vol. 7, 5th Ed. § 3068.7.

It may also be added that inquiry made by counsel with regard to the practice of referees in some of the larger metropolitan areas develops the information that it is the general practice there in situations similar to the instant case, to call a first meeting of creditors in accordance with section 91(55) *after* the order of adjudication is made in a Chap. XI proceeding.

It is therefore necessary to reverse the order of the referee rejecting the claims of creditors who have petitioned for review. The referee should now promptly fix a date for the first meeting of creditors in accordance with section 91(55) and give the appropriate notice thereof by mail and publication. Claims of creditors not heretofore duly filed may be filed hereafter within three months of the date set. It will be desirable for the referee in his notice to make sufficient explanation to avoid confusion or uncertainty of creditors with respect to their rights, in view of the prior procedure.

Counsel should present the appropriate orders in the several cases.