## In re CREDIT SERVICE, Inc.

### No. 9340.

District Court, D. Maryland.

June 12, 1942.

Carlyle Barton, of Baltimore, Md., for trustee.

Roland C. Ready and Coady & Farley, all of Baltimore, Md., for certain petitioners.

CHESNUT, District Judge.

The matter now presented in the above bankruptcy case is a review of the referee's order excluding certain claims filed after September 23, 1941, which the referee determined to be the latest date permissible for the filing of claims. About forty separate claims were filed after this date. All were excluded by the referee; a number have petitioned for review; and at the hearing in this Court a few only appeared in person or by attorney in support of the petitions for review.

The referee has filed two extended memoranda, reviewing the facts and applicable law, one on April 18, 1942, with respect to the claim of Lilley & Co., of Philadelphia, Pennsylvania, dealers in securities, and a separate memorandum filed May 4, 1942, with regard to other claims filed too late as he held.

After hearing the petitioners or their counsel and consideration of their arguments, and careful review of the referee's memoranda opinions, I conclude that the order of the referee excluding all the claims must be and it is hereby *affirmed*.

A somewhat similar subject matter in this bankruptcy case was fully considered in an opinion of this Court, 38 F.Supp. 761, to which reference is hereby made.

On October 22, 1939, the bankrupt originated the proceeding in this case by voluntarily filing of a petition for arrangement under Chap. XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. Promptly thereafter meetings of creditors were called after due notice and a trustee was

tentatively selected. A few months thereafter it became apparent that no arrangement could be satisfactorily made and on July 2, 1940, an order was entered adjudging the debtor a bankrupt and confirming the appointment of the tentatively selected trustee. Practically the only creditors of the bankrupt were the holders of unsecured registered debentures of the par value of about $5,000,000. Thereafter in the ordinary course of administration the holders of more than $4,000,000 par value of these filed their claims. Acting on his construction of the applicable law the referee notified the creditors that their claims if not already filed must be filed on or before October 22, 1940. However, quite a large number of claims aggregating approximately $150,000 par value were filed subsequent to October 22, 1940, and, having been rejected by the referee, petitions for review were filed. The question was whether the meeting of creditors held while the proceeding was pending under Chapter XI could properly be called the "first meeting of creditors" within the meaning of the phrase as contained in the bankruptcy statutes. The referee had acted on the assumption in the affirmative. However, this Court took a contrary view of the matter and held that up to that time the technical first meeting of creditors had not been held. The case was thereupon remanded to the referee to proceed anew to give the three months' notice for the filing of claims by creditors and to "allow" claims properly filed theretofore or within the period mentioned. Thereupon the referee called the technical first meeting of creditors and gave the appropriate notice, by mail to all the creditors in accordance, with the list of names and addresses as registered on the books of the bankrupt. Pursuant to this notice the latest date for the filing of claims was fixed as September 23, 1941. Copy of the notice was also published in the Baltimore Daily Record as required by the applicable bankruptcy statutes. In the referee's memorandum it was inadvertently stated that the publication was in the Baltimore Sun.

The referee has disallowed about forty claims filed since September 23, 1941, and the present question is whether they can properly be allowed to be filed. I am forced to the conclusion that under the applicable statutes, the claims cannot be allowed because the utmost permissible time for filing has passed. The matter is so fully discussed in the former opinion of this Court, 38 F.Supp. 761, and in the present memoranda of the referee that it is unnecessary to review the subject again in detail. I will, however, refer to the principal points now made in support of the several petitions for review of the referee's orders.

The applicable bankruptcy statute prescribing time for the permissible filing of claims in this particular case is 11 U.S.C.A. § 755. The relevant portion thereof reads as follows: "Claims not already filed *may* be filed within three months after the first date set for the first meeting of creditors, held pursuant to section 91 of this title, or, if such date has previously been set, then within three months after the mailing of notice to creditors of the entry of the order directing that bankruptcy be proceeded with." (Italics supplied.)

In the ordinary bankruptcy case claims must be filed within six months after the first date set for the first meeting of creditors. 11 U.S.C.A. § 93, sub. n provides in part:

"Claims which are *not* filed *within six* months after the first date set for the first meeting of creditors shall not be allowed: * * *

"When in any case all claims which have been duly allowed have been paid in full, claims not filed within the time hereinabove prescribed may nevertheless be filed within such time as the court may fix or for cause shown extend and, if duly proved, shall be allowed against any surplus remaining in such case."

■ This section, however, is not the one applicable in this particular case because the whole matter originated in a Chapter XI proceeding and was thereafter transferred to ordinary bankruptcy. Section 755 above referred to therefore controls in this case. The point is now made that the word "may" in Section 755 is permissive only and not necessarily mandatory. But I think this construction is not sound as was indicated in the former opinion of this Court, 38 F.Supp. 763. See also the referee's memorandum opinion upon the subject.

■ In this connection another point is now made. It is that the Court of Bankruptcy has equity powers in the administration of the bankruptcy law and therefore has the equitable power to extend the time for filing claims, as is admittedly the power of a Court exercising ordinary

equitable jurisdiction. In support of this contention reference is made to note 11 in the opinion of Mr. Justice Douglas in the case of Pepper v. Litton, 308 U.S. 295 pages 304, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281. In that note it is said: "And even though the [bankruptcy] act provides that claims shall not be proved against the bankrupt estate subsequent to six months after the adjudication, the bankruptcy court in the exercise of its equitable jurisdiction has power to permit claims to be proved thereafter *in order to prevent a fraud or an injustice.* Williams v. Rice, 5 Cir., 30 F.2d 814; In re Pierson, D.C., 174 F. 160; Larson v. First State Bank, supra [8 Cir., 21 F.2d 936, 938]; Burton Coal Co. v. Franklin Coal Co., 8 Cir., 67 F.2d 796."

An examination of these cited cases will show that they involved situations entirely different from that appearing in the instant case. There is nothing here to show any fraud upon the belatedly filed claims, nor any injustice to them other than that consequent upon their own failure to file within time. In one of the cases cited, Williams v. Rice, 5 Cir., 30 F.2d 814, 815, the Court said: "If a creditor is negligent, he may not file his claim after the limitation of the statute has run, but a new situation arises whenever the bankrupt, although unwittingly, has deceived the creditors, and he is the only one asserting an adverse interest in the assets."

The evident purpose of the time limit upon filing claims in bankruptcy is to promote a reasonably expeditious closing of the case with consequent distribution to creditors who have acted diligently. The concluding sentence above quoted from Section 93, sub. n, 11 U.S.C.A., is also indicative of this purpose.

Another point now urged is that in this case there ought to have been wider publication of the first meeting of creditors than was given by the notice in the Baltimore Daily Record. It is pointed out that the number of individual claimants is very large, more than 3,000, and the holders of the debentures were presumably widely scattered, and particularly there ought to have been a publication in a New York newspaper as well as in a Baltimore paper. 11 U.S.C.A. § 94, sub. d provides: "Notice to creditors of the first meeting shall be published at least once and may be published such number of additional times as the court may direct; the last publication shall be at least one week prior to the date fixed for the meeting. Other notices may be published as the court shall direct."

Notice by publication was given in this case as required by this statute. 11 U.S.C.A. § 51 provides: "The judges of courts of bankruptcy shall by order designate a newspaper published within their respective territorial districts, and in the county in which the bankrupt resides or the major part of his property is situated, in which notices and orders which the court may direct to be published shall be inserted. And the court may in a particular case, for the convenience of parties in interest, designate some additional newspaper in which notices and orders in such case shall be published."

In this case the publication in The Daily Record was in accordance with this statute. See In re Sterling Cleaners & Dyers, 7 Cir., 81 F.2d 596. It is true that the referee might on his own initiative and in his discretion, or upon the request of the trustee or of creditors, have made the more extensive publication of the notice than was actually made in this case, and perhaps it may be said that in view of the very large number of creditors it would have been well in this particular case to do so; but it does not appear here that the referee's failure to require more than one publication was an abuse of his discretion or a failure to comply with the statutory requirements.

Finally, it is urged that the present allowance of the belated claims will not of itself cause further delay in closing the case or additional expense in administration because one distribution account has already been filed paying about 4% to creditors, and the trustee now has in hand a further sum of about $90,000 which will require a second distribution account, and in the latter these belated claims can be first allowed the 4% dividend which other creditors have received, and then share pro rata with all creditors. If this were a case of ordinary equity jurisdiction I should be strongly disposed to extend the time for the filing of these late claims; but as I understand the applicable bankruptcy statutes, and as they have been heretofore quite uniformly construed, the court does not have the power to make the extension under the statute applicable to this case. It is unfortunate that the claims were not filed in time but there has been

due notice given by the referee. Nine-tenths of all claims have been filed although the holders were numerous and the claims presumably widely scattered. An important consideration affecting the question of diligence or lack of attention by the creditors is the fact that the claims were practically all on registered debentures with the addresses of the original holders recorded on the books of the bankrupt and interest was stopped on the payment of the claims since November 1, 1939. This of itself was a circumstance which put the creditors on notice and inquiry with regard to the affairs of the bankrupt. Frequent notices of various bankruptcy proceedings have been sent by mail by the referee to the holders of these debentures in accordance with their registered addresses. In addition there was constructive notice to all by the required publication. Even at this late date more than two years after the cessation of the payment of interest, and after the origination of the proceedings, still a large number of debenture holders have not filed their claims, and it is common experience in similar cases that some claims of this nature are never filed. In order that the case may be closed there must be a time limit set beyond which creditors negligent of their own interests cannot expect to participate in dividends. This time limit has been set in this case by the statutes and cannot now be further extended. In the majority of cases the late claims now asking for further extension have no reasonable excuse to offer for the delay. In a few of the cases it appears that the claimants did not in fact know of the pending proceeding. This seems to be due principally to the fact that they changed their addresses without notice thereof to the bankrupt, or acquired the debentures from the registered holders and did not at the time of acquisition or within a reasonable time thereafter, notify the bankrupt, or the trustee in bankruptcy, or the referee, of their names and addresses as transferees; and consequently presumably did not receive the written notice by mail sent by the referee to the registered holders in accordance with the addresses previously given. The failure of these claimants to give notice of the transfers with their new addresses indicates their lack of diligence in attending to their own interests. In some few cases it appears that the present claimants knew of the proceedings but were unfortunately wrongly advised by some one not connected with the administration of the bankruptcy case to the effect that it was not necessary for them to take any action to protect their interests.

■ With regard to the claim of Lilley & Co., the referee has filed a separate memorandum dated April 18, 1942. A Mr. Welsh of Lilley & Co. appeared in person for this claimant in support of the petition for review of the referee's order excluding the claim because filed too late, to wit, on November 14, 1941. This particular claim was filed on $5,000 par value of the debentures which it appears were acquired by Lilley & Co., on October 14, 1941. It further appears that Lilley & Co., who are dealers in unlisted securities, were holders also of $50,400 par value of these debentures on which they had filed claims prior to September 23, 1941. The referee points out that there is clearly no hardship to this claimant in the disallowance of the claim filed after September 23, 1941, because they must have previously received notices from the referee with regard to the final date and the referee adds: "Their letter to the Judges states that they assumed in buying the bonds on which the claim was based that proof of claim had already been filed. It is impossible to believe that they could have so supposed, because they knew from their own experience (1) that bonds were required to be filed with claims (2) that bonds attached to claims previously filed were transferable only as claims pursuant to notice to the original claimant. They may have purchased the bonds before the time to file claims expired and inadvertently failed to file claim within the time, or they may have inadvertently purchased the bonds after the time to file claim thereon had elapsed. In either case there appears to have been no hardship which would dispose the court to relax the statutory limitation, if the court has power to do so."

At the hearing here Mr. Welsh of Lilley & Co. stated that the $5,000 of debentures on which claim was filed too late were purchased by their representative in New York on October 14, 1941, and presumably without knowledge on his part that the former owner had not filed claim, or that the time for filing claims thereon had already expired; and therefore that the inference of the referee with respect to the knowledge of the Philadelphia office of Lilley & Co. was incorrect. But accepting Mr. Welsh's explanation of the

matter, it still does not follow that the claim can be now allowed for the reasons already indicated.

The orders of the referee in disallowing all these claims filed after September 23, 1941, are hereby *affirmed*.